UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK_____

GLEN RUSHEFSKY, on behalf of himself and all
Others similarly situated,                                                    Docket No.

        Plaintiff,                                          **CLASS ACTION COMPLAINT**
v.                                                                         **& DEMAND FOR JURY TRIAL**

ARVELLA FRAGRANCE LLC,

        Defendant,

_____

     Plaintiff, GLEN RUSHEFSKY ("Plaintiff" or "Mr. Rushefsky"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert Schonfeld, Esq. of JOSEPH NORINSBERG, LLC, brings this action against ARVELLA FRAGRANCE LLC ("ARVELLA FRAGRANCE" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to ensure that its e-commerce Website, www.arvellafragrance.com, is accessible to blind and visually impaired individuals.

### INTRODUCTION

1.     Plaintiff GLEN RUSHEFSKY is a legally blind resident of Bronx County, New York, registered with the New York State Commission for the Blind under Registration No. 284906. According to a July 15, 2025, medical evaluation by Dr. Samuel R. Mendel, MD, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. Dr. Mendel documents that Mr. Rushefsky suffers from profound central scotomas,

severely reduced visual acuity, and markedly diminished contrast sensitivity, meeting both federal and New York State criteria for legal blindness. Due to the severity and permanence of his condition, Dr. Mendel recommends that Mr. Rushefsky receive 24-hour supportive care to ensure his safety and ability to perform activities of daily living. *See* Exhibit A.

2.    Because of his permanent and irreversible vision loss, Mr. Rushefsky relies exclusively on screen-reader software, including NonVisual Desktop Access ("NVDA"), to navigate digital interfaces, read product information, and complete online transactions. When a website is properly coded, NVDA can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, NVDA cannot interpret essential content, rendering the site unusable for blind users.

3.    Defendant ARVELLA FRAGRANCE LLC owns, operates, and controls the commercial retail website www.arvellafragrance.com, which markets and sells premium fragrances, cologne, perfume, samples, and related products to consumers throughout the United States, including New York. The Website functions as an online retail store and a digital gateway to Defendant's nationwide distribution network. Defendant is responsible for ensuring that the Website complies with federal, state, and local accessibility laws.

4.    On three separate occasions—December 16, 2025, December 17, 2025, and February 10, 2026—Mr. Rushefsky visited www.arvellafragrance.com using NVDA with the intent to browse and purchase specific fragrance products, including the **Yves Saint Laurent La Nuit de L'Homme Sample** and the **Valentino Uomo Born In Roma Extradose Parfum**. Plaintiff is an enthusiast of premium fragrances and relies on accessible online platforms to independently evaluate product descriptions, compare scent

profiles, review sizes and pricing, and complete purchases. His visits to the Website were motivated by a genuine desire to obtain these products and complete purchases he was unable to make due to the Website's accessibility barriers.

5.    During each visit, Mr. Rushefsky encountered multiple accessibility barriers that prevented him from meaningfully browsing or purchasing merchandise. NVDA announced product images only as "graphic," size selectors only as unlabeled buttons, and the "Add to Cart" control without any accessible name or purpose. As a result, he could not determine product details, could not select his size, and could not add any item to his cart. Defendant provided no accessible alternative means for blind consumers to obtain the same information.

6.    Automated accessibility audits confirm the barriers Mr. Rushefsky personally encountered. A WAVE scan of the **La Nuit de L'Homme Sample** product page returned **20 Errors**, **3 Contrast Errors**, and over **73 Alerts**, with an **AIM Score of 5.7 out of 10**. A WAVE scan of the **Valentino Uomo Born In Roma Extradose Parfum** product page returned **22 Errors**, **6 Contrast Errors**, and over **86 Alerts**, with an **AIM Score of 5.6 out of 10**, including missing alternative text, empty buttons, empty links, broken ARIA references, missing form labels, and unlabeled interactive controls. A WAVE scan of the **All Products – Premium Fragrances** page returned **30 Errors**, **56 Contrast Errors**, and over **197 Alerts**, with an **AIM Score of 3.4 out of 10**. These findings confirm that the Website's inaccessibility is systemic and pervasive, not isolated. See Exhibit B.

7.    Defendant's failure to design, maintain, and operate its Website in a manner accessible to blind and visually impaired consumers denies Mr. Rushefsky—and all similarly situated individuals—the full and equal enjoyment of Defendant's goods, services, privileges, and advantages, in violation of Title III of the Americans with

Disabilities Act, the New York State Human Rights Law, the New York City Human Rights Law, and the New York State Civil Rights Law.

8.      Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is—and remains—fully accessible to blind and visually impaired consumers in substantial conformance with WCAG 2.1 Level AA.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III of the Americans with Disabilities Act ("ADA"), a federal civil rights statute. Supplemental jurisdiction over Plaintiff's state and city law claims is proper under 28 U.S.C. § 1367.

10.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 Executive Law § 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") § 296 *et seq.*, and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

11.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in Bronx County, accessed and attempted to use the Website from his home within this District, and suffered injury here. A substantial part of the discriminatory conduct giving rise to this action—including the denial of equal access to Defendant's online goods, services, and digital content—occurred within this District.

12.      Defendant Arvella Fragrance LLC conducts substantial, continuous, and

systematic business within this District by marketing, advertising, and selling premium fragrances, colognes, perfumes, samples, and accessories to New York consumers through its highly interactive retail Website, www.arvellafragrance.com. Defendant purposefully avails itself of the privilege of conducting business in New York by transmitting digital content, files, and data to consumers located in this District, fulfilling online orders to New York addresses, and engaging in nationwide e-commerce directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

13.    Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here. Courts within this Circuit have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state website operators whose digital platforms target or serve New York consumers.

## **THE PARTIES**

14.    Plaintiff GLEN RUSHEFSKY is a legally blind resident of Bronx, New York, and is registered with the New York State Commission for the Blind under Registration No. 284906. As documented in a July 15, 2025, medical evaluation by Dr.

Samuel R. Mendel, MD, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. He presents with profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity. Because of his irreversible vision loss, Mr. Rushefsky relies exclusively on screen-reader software, including NVDA, to navigate digital interfaces, read product information, and complete online transactions independently.

15.    Defendant ARVELLA FRAGRANCE LLC is a business entity that owns, operates, controls, and maintains the commercial retail website www.arvellafragrance.com, which markets and sells premium fragrances, colognes, perfumes, samples, and related products to consumers nationwide, including residents of New York. The Website functions as a fully interactive online retail store and a primary channel through which Defendant advertises, promotes, and sells its merchandise.

16.    Defendant markets, advertises, and sells its products directly to New York consumers through its Website, transmits digital content to users located in this District, and maintains a highly interactive online platform that enables consumers to browse products, review descriptions, select configurations, access promotions, and complete purchases. The Website includes detailed product pages—such as the **La Nuit de L'Homme Sample** and the **Valentino Uomo Born In Roma Extradose Parfum**—that present images, descriptions, specifications, and purchasing information to consumers nationwide. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner that is accessible to individuals who rely on screen-reading

technology.

17.     At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website and by repeatedly transmitting digital content, files, and data to consumers located here. Defendant's ongoing operation of a nationwide e-commerce platform directed at New York consumers constitutes continuous and systematic business activity within this District.

## NATURE OF ACTION

18.     This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines ("WCAG 2.1") constitutes unlawful discrimination and violates federal accessibility standards.

19.     The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

20.     In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired

persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

21.    Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

22.    Plaintiff **Glen Rushefsky** is a blind and visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)–(2), its implementing regulations at 28 C.F.R. § 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

23.    For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users cannot access the same content available to sighted users. Screen-reading software translates the visual Internet into an auditory equivalent by reading webpage content aloud at a rapid pace. *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be clicked, which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory— rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

See also American **Foundation** for the Blind, *Screen Readers*, AFB Technology

Guide (last accessed June 12, 2025), noting that approximately 26 million American adults report significant vision impairment. *Id.* at 375.

24.    The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG 2.0" and "WCAG 2.1"), which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

25.    Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

- Missing text equivalents for non-text elements
- Unlabeled frames and navigation regions
- Scripts without accessible alternatives
- Inaccessible forms and input fields
- Content conveyed solely through visual presentation
- Inability to resize text without loss of functionality
- Time limits that cannot be adjusted or disabled
- Missing or ambiguous page titles
- Links lacking descriptive context
- Keyboard focus indicators that are not discernible
- Undetectable default language settings
- Components that trigger unexpected context changes
- Settings that alter context without user notice
- Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts
- Improperly nested markup, duplicate attributes, and non-unique IDs
- Inaccessible Portable Document Format (PDF) files
- User interface elements whose roles and states cannot be programmatically determined (items that can be set by the user cannot be programmatically set and/or notification of changes to these items is not available to user agents, including assistive technology)

**STATEMENT OF FACTS**

26.    Plaintiff GLEN RUSHEFSKY is a legally blind consumer residing in Bronx, New York, and is registered with the New York State Commission for the Blind under Registration No. 284906. As documented in a July 15, 2025, medical evaluation by Dr. Samuel R. Mendel, MD, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. He presents with profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity. Because of this permanent impairment, Mr. Rushefsky relies exclusively on screen-reader software, including NVDA, to navigate digital interfaces, read product information, and complete online transactions.

27.    LHON is a permanent, non-reversible condition for which there is no curative treatment. Mr. Rushefsky's remaining peripheral vision is insufficient for reading standard print, recognizing images, or visually interpreting digital interfaces. As a result, he depends entirely on properly coded, screen-reader-compatible websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers.

28.    In late 2025 and early 2026, Mr. Rushefsky became interested in purchasing several premium fragrance products from Arvella Fragrance, including the **Yves Saint Laurent La Nuit de L'Homme Sample** and the **Valentino Uomo Born In Roma Extradose Parfum**. As a blind consumer who relies on detailed product descriptions and accessible online shopping to independently evaluate and purchase fragrances, he selected

Arvella Fragrance because of its reputation for offering authentic premium fragrances, competitive pricing, and a wide selection of samples and full bottles. His interest in these specific products motivated him to visit www.arvellafragrance.com to explore and purchase these items.

29.    On **December 16, 2025,** using NVDA on his Windows computer, Mr. Rushefsky navigated directly to the **La Nuit de L'Homme** Sample product page on www.arvellafragrance.com by activating a link labeled "**La Nuit de L'Homme** Sample" from the site's product listings. Once there, NVDA announced the page title and some headings but failed to provide accessible information for core interactive elements. The main product image for the **La Nuit de L'Homme** bottle and sample vials appeared to NVDA only as "graphic," without any alt text describing the product or the fact that it was a **Yves Saint Laurent** fragrance sample, leaving Plaintiff unable to confirm visually conveyed details such as branding, packaging, or presentation. When he attempted to move to the size options, NVDA read only "3 ml," "5 ml," and "10 ml" as isolated text without identifying them as interactive size selectors or indicating which option, if any, was selected, preventing him from understanding that these were actionable controls he needed to activate in order to choose a size. NVDA reached the "Add to Cart" control but announced it generically as "button" without an accessible name, and when focus moved away it was unclear whether any size had been selected or whether the button had actually added anything to the cart. Several links and headings in the mid-page and lower portions of the product page were announced simply as "link" or "heading" with no descriptive context, making it impossible for Plaintiff to use NVDA's link or heading lists to navigate efficiently among description, pricing, and "You may also like" sections. Because of these missing labels and empty links, he could not confidently identify the product size, confirm

the price for each size, or execute a successful "Add to Cart" action for the **La Nuit de L'Homme** Sample on that visit.

30.    On **December 17, 2025**, Plaintiff returned to www.arvellafragrance.com intending to select and purchase the **Valentino Uomo Born In Roma Extradose Parfum.** Using NVDA, he reached the specific **Valentino Uomo Born In Roma Extradose** product page from a search or category listing, where sighted users can choose between 1.7 oz. and 3.4 oz. bottle sizes, view price information, and complete checkout. NVDA announced the main page heading as "**Uomo Born In Roma Extradose Parfum**," but the primary product image and additional thumbnail images were once again read only as "graphic" or "link" without any alt text indicating that they depicted **Valentino Uomo Born In Roma** bottles or packaging. When Plaintiff attempted to navigate to the size selection controls, NVDA encountered radio buttons or toggles that were rendered simply as unlabeled "button" or "group," without any programmatically associated label indicating "1.7 oz." or "3.4 oz.," and without any feedback about which size was currently selected. The "Add to Cart" control appeared in NVDA as an unidentified "button" adjacent to unlabeled quantity and payment widgets, and when he activated it, there was no accessible confirmation that any item had been added to the cart. Nearby "Buy with Shop Pay" or installment-plan widgets were similarly presented by NVDA as a cluster of unlabeled buttons and links, forcing Plaintiff to guess their function based on position rather than accessible text. The review section for the product was announced only as "5.0 stars," "2 reviews," and multiple "link" items with no clear association to specific review content or headings, and portions of review text were truncated or inaccessible because they were embedded in widgets that were not fully exposed to NVDA. As a result, Plaintiff could not determine which size he was selecting, what the price was for each size, whether the selected size was in stock, or

how other consumers had rated the fragrance, and he was therefore unable to complete a purchase of **Valentino Uomo Born In Roma Extradose Parfum** on that date.

31.     On **February 10, 2026,** Plaintiff visited the "**All Products – Premium Fragrances**" browsing page on www.arvellafragrance.com to compare **La Nuit de L'Homme, Valentino Uomo Born In Roma Extradose**, and other premium fragrances offered by Arvella. This page presents numerous product tiles and filter options that, for sighted users, display brand names, product names, images, list prices, and discounted prices. When Plaintiff navigated this page with NVDA, most product images were announced only as "graphic" or "image error," without any alt text identifying the brand or product displayed, and several linked images were announced as "link" with no accompanying name. Product names and prices appeared inconsistently in the reading order; in multiple instances, NVDA read the price ("$145.00," "$85.00," or similar amounts) without clearly associating that price with any particular product name, because these elements were separated by empty links and improperly structured markup. Filter and sort controls labeled visually as "Filter By Brand," "Availability," "Price," and "Sort By" were not exposed as properly grouped form controls; NVDA announced them as isolated "button" or "list box" elements with no clear relationship to the underlying options, and in some cases activating a filter drop-down produced no audible change in focus or state. Because essential filters and sort options were not announced in a coherent way, Plaintiff could not meaningfully refine results by brand, price range, or availability, nor could he reliably move between individual product tiles to compare **La Nuit de L'Homme, Valentino Uomo Born In Roma Extradose,** and other fragrances. The combination of missing image descriptions, empty links, and unlabeled filter controls prevented him from understanding which products were on sale, which were discontinued, and which were

available as samples or full bottles, thereby obstructing his ability to identify and select the items he wanted.

32.    The persistent and page-specific accessibility barriers Plaintiff encountered align with the objective violations documented by automated WAVE scans of these same pages. On the **La Nuit de L'Homme** Sample product page, the WAVE tool identified 20 Errors, including 7 Missing Alternative Text errors for images that NVDA announced only as "graphic," 1 linked image missing alternative text, 1 empty heading, and 11 empty links, as well as 3 Contrast Errors and 73 Alerts, resulting in an AIM Score of 5.7 out of 10. On the **Valentino Uomo Born In Roma Extradose Parfum** product page, WAVE reported 22 Errors, including 7 Missing Alternative Text errors, 3 linked images missing alternative text, 1 empty heading, 11 empty links, 6 Contrast Errors, multiple missing form labels, empty buttons, broken ARIA references, and unlabeled interactive controls, with an AIM Score of 5.6 out of 10. On the All Products – Premium Fragrances page, WAVE identified 30 Errors, including 7 Missing Alternative Text errors, 6 linked images missing alternative text, 4 missing form labels, 1 empty heading, 10 empty links, 2 broken ARIA references, 56 Contrast Errors, and 197 Alerts, with an AIM Score of 3.4 out of 10. These findings confirm that the specific barriers Plaintiff experienced on each of these pages—missing alt text, empty or unlabeled interactive controls, broken ARIA relationships, and contrast problems—are real, repeatable, and systemic.

33.    The accessibility violations documented in these WAVE reports demonstrate that Defendant's Website's inaccessibility is pervasive, not isolated. The same kinds of defects—missing alternative text on key product images, empty or unlabeled buttons and links, broken ARIA references that prevent screen readers from properly identifying landmarks and groups, missing form labels for size and filter controls, and

serious contrast errors—appear simultaneously on the **La Nuit de L'Homme** Sample page, the **Valentino Uomo Born In Roma Extradose Parfum** page, and the All Products – Premium Fragrances browsing page, showing that Defendant has failed to implement industry-standard accessibility practices across its core ecommerce flows.

34.    As a direct result of these page-specific barriers, Mr. Rushefsky was unable to browse products, activate filters, read complete descriptions, select sizes or configurations, or access essential information needed to evaluate or purchase the fragrances he was specifically interested in. On the **La Nuit de L'Homme** Sample page, the lack of alt text, unlabeled size selectors, and an ambiguously labeled "Add to Cart" button prevented him from selecting a sample size and confirming a purchase. On the **Valentino Uomo Born In Roma Extradose Parfum** page, unlabeled size controls, missing form labels, and broken ARIA references made it impossible for him to determine which bottle size he was choosing or whether any item had been successfully added to his cart. On the All Products – Premium Fragrances page, missing image descriptions, empty links, and improperly labeled filter controls interfered with his ability to identify specific products, compare prices, and narrow results by brand or price. His exclusion from these specific transactions was real, repeatable, and directly caused by Defendant's failure to implement industry-standard accessibility practices.

35.    Defendant's Website is not a passive marketing tool. It is a fully interactive retail platform central to Defendant's business model, offering product listings, detailed descriptions, specifications, promotional content, customer reviews, filtering and sorting tools, and checkout functionality. Defendant relies on www.arvellafragrance.com  to market and distribute its products nationwide, including to consumers in New York, and to sell both full bottles and sample-size fragrances such as the La Nuit de L'Homme Sample

and the Valentino Uomo Born In Roma Extradose Parfum.

36.    On information and belief, Defendant has operated www.arvellafragrance.com without implementing WCAG-compliant accessibility protocols. Despite long-standing federal guidance and the widespread availability of automated testing tools such as WAVE, Defendant has not remediated the barriers identified on the **La Nuit de L'Homme** Sample page, the **Valentino Uomo Born In Roma Extradose Parfum** page, or the All Products – Premium Fragrances page. The very same categories of issues—missing alt text on critical product imagery, empty and unlabeled buttons and links, missing form labels for size and filter controls, broken ARIA relationships, and insufficient color contrast—persist across product listings, category pages, and navigational flows, reflecting a systemic disregard for blind and visually impaired users.

37.    Plaintiff's intent to return to www.arvellafragrance.com is concrete, credible, and ongoing. His interest is not abstract or generalized; it is tied to specific products (**Yves Saint Laurent La Nuit de L'Homme** Sample and **Valentino Uomo Born In Roma Extradose Parfum**), specific attempted transactions on specific pages, and specific functional needs arising from his blindness, including the need for accessible size selectors, clearly labeled "Add to Cart" controls, and readable descriptions and reviews.

38.    Plaintiff continues to seek the **Yves Saint Laurent La Nuit de L'Homme Sample**, a product he researched extensively and attempted to purchase during his prior visits. The product is offered in multiple sizes (3 ml, 5 ml, and 10 ml spray samples) with detailed specifications and pricing that are available only on **Arvella Fragrance's La Nuit de L'Homme** Sample product page. Because Plaintiff cannot visually inspect fragrance products in stores or read printed packaging, he depends entirely on accessible online

product pages to evaluate features such as scent notes, size options, pricing, and authenticity guarantees. Once Defendant remedies the alt-text deficiencies, properly labels the size selection controls, and exposes the "Add to Cart" function to screen readers, Plaintiff intends to return to that specific product page, select a size, and complete the purchase.

39.    Plaintiff also remains interested in purchasing the **Valentino Uomo Born In Roma Extradose Parfum**, which he attempted to evaluate during his **December 17, 2025,** visit. This product is offered in multiple sizes (including 1.7 oz. and 3.4 oz.) with critical pricing and customer review information contained on the dedicated product page. For a blind consumer, the ability to distinguish between sizes, understand the price associated with each size, and review accessible customer feedback is essential to making an informed purchasing decision. Plaintiff intends to revisit the **Valentino Uomo Born In Roma Extradose Parfum** page to confirm size availability, review customer feedback in an accessible format, and complete the purchase once the Website presents labeled size controls, accessible "Add to Cart" and checkout functions, and properly structured review content.

40.    Plaintiff's need for accessible online shopping is permanent and ongoing. His LHON-related vision loss prevents him from browsing physical retail stores, reading packaging, or visually inspecting fragrance products. As a result, he relies exclusively on accessible ecommerce platforms to evaluate and purchase products. Arvella Fragrance's Website offers a broader, more current, and more detailed selection of premium fragrances, including hard-to-find discontinued items and sample sizes such as the **La Nuit de L'Homm**e Sample and the **Valentino Uomo Born In Roma Extradose Parfum,** making it a particularly valuable resource for blind consumers seeking accessible options in the

fragrance marketplace.

41.    Plaintiff's prior attempts to shop on the Website were genuine and purposeful, motivated by his desire to purchase the **La Nuit de L'Homme** Sample and the Uomo Born In Roma Extradose Parfum on the specific product pages he visited on **December 16, 2025, December 17, 2025**, and **February 10, 2026.** On each occasion, he attempted to read product descriptions, review specifications and customer feedback, select sizes, and add items to his cart but was prevented from doing so by concrete, page-level accessibility barriers affecting product images, size selectors, filter controls, and "Add to Cart" functionality. His inability to complete these transactions does not diminish his interest in the Website; it reinforces his motivation to return once those specific barriers are removed so that he can buy the exact products he originally sought.

## CLASS ACTION ALLEGATIONS

42.    Plaintiff GLEN RUSHEFSKY brings this action on behalf of himself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2):

**All legally blind individuals in the United States who have attempted to access www.arvellafragrance.com and were denied equal access to its digital content, product information, and online purchasing functions due to persistent accessibility barriers during the relevant statutory period.**

43.    Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2):

**All legally blind individuals residing in the State of New York who have attempted to access www.arvellafragrance.com and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.**

44.    Common questions of law and fact exist among the Class, including:

- Whether www.arvellafragrance.com qualifies as a public accommodation or a service of a place of public accommodation under Title III of the ADA
- Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace

45.    Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

46.    Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

47.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

48.    Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

49.    Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use Defendant's

Website and faced exclusion due to its inaccessibility.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

50.     Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

51.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

52.     Defendant's Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

53.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

54.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

- A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and

- A failure to take such steps may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

55.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.arvellafragrance.com, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

56.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section "Prayer For Relief" below.

**SECOND CAUSE OF ACTION**
**Violation of New York State Human Rights Law ("NYSHRL")**

57.    Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding

paragraphs as if fully set forth herein.

58. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law § 290 *et seq.*, covers the actions of the Defendants.

59. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

60. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.arvellafragrance.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

61. Plaintiff has visited the Website, www.arvellafragrance.com, on a number of occasions and has encountered barriers to his access that exist.

62. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

63. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

64. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that

is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

65.    The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

66.    Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

67.    Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y.

Exec. Law § 296(2) and the discrimination continues to date.

68.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

69.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law ("NYCRL"))**

70.    Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

71.    Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41.

72.    Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

73.    "No person, because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision." N.Y. Civ.

Rights Law ("NYCRL") § 40-c.

74.    § 292 of Article 15 of the N.Y. Executive Law deems a disability, "a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function." As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

75.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.arvellafragrance.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

76.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

77.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

78.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*

79.    Plaintiff and the Sub-Class hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

## FOURTH CAUSE OF ACTION
### (Violations of the New York City Human Rights Law ("NYCHRL"))

80. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

81. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of any person's . . . disability . . . directly or indirectly to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

82. Defendant is subject to NYCHRL because it owns and operates the Website, www.arvellafragrance.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

83. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

84. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of § 8-107 *et seq.* from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

85.     Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

(a) constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

86. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

87.     As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

88.     Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

89.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502.

90.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

91.     Under N.Y.C. Administrative Code §§ 8-120 and 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

92.    Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

93.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

94.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

1.    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

2.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and

usable by blind individuals;

3.      A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

4.      An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

5.      Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

6.      Pre-judgment and post-judgment interest;

7.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

8.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated:

New York, New York,

March 14, 2026

Respectfully submitted,

JOSEPH & NORINSBERG, LLC

/s/ Robert Schonfeld

Robert Schonfeld, Esq.
Attorneys for Plaintiff
825 Third Avenue, Suite 2100
New York, New York, 10022
Tel. No. (212) 227-5700
Fax No. (212) 656-1889
rschonfeld@employeejustice.com